UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

In re:                                                 Case Number: 11-11386-11

J&B HALDEMAN HOLDINGS, LLC,

Debtor.

In re:                                                 Case Number: 11-11359-11

JAMES B. HALDEMAN and
BARBARA J. HALDEMAN,

Debtors.

## DECISION

On March 24, 2014, Black River Country Bank ("BRCB") filed a post-confirmation motion pursuant to 11 U.S.C. § 1142(b) requesting the Court to direct transfer of real estate according to the terms of a confirmed plan. The Debtors, J&B Haldeman Holdings, LLC, and James and Barbara Haldeman,[1] object to the motion. For the following reasons, BRCB's motion is GRANTED.

### FACTS AND PROCEDURAL HISTORY

The Debtors' plan was confirmed on March 22, 2013 (the "Plan"). With respect to BRCB's secured claim, the Plan required monthly interest payments as well as principal reductions based on an annual schedule. The schedule included a $50,000 principal payment that was due by December 31, 2013.

---

[1] The above-styled Chapter 11 cases have been jointly administered since April 13, 2012.

The Debtors failed to make this payment. In addition, the Plan provides that

BRCB retains its mortgages on all property until the Debtors' obligations are

satisfied in full. Likewise, the Debtors' "personal guaranties remain in full force

and effect until the obligations are paid in full."

The Plan also addresses the consequences of defaults by the Debtors. It

permits the Debtors a 60-day cure period.[2] If, by the end of the 60-day period,

the Debtors fail to make any payment, the Plan provides the Debtors "will deed

back the remaining secured property to the Black River Country Bank." The

Debtors failed to cure the payment default within the cure period.

The Plan also provides that "[t]he Bankruptcy Court shall retain

jurisdiction on [sic] this confirmed Chapter 11 proceedings as it relates to the

terms, conditions and provisions of this agreement as it relates to default,

conditions, and any matter relating to the contract." Further, it states that:

> The Court shall retain jurisdiction of the Chapter 11
> case pursuant to and for the provisions set forth in
> Section 1127 and 1142 of the Bankruptcy Code as
> follows:
>
> 1.    To determine the allowance or disallowance of claims
>        and interests.
>
> 2.    To fix allowance of compensation and other
>        administrative expenses.

---

[2] The 60-day cure period is embodied in the Plan provision stating, "If Haldeman (debtors) fail to make any payment within 60 days of its due date, they will deed back the remaining secured property to Black River Country Bank."  Amended Plan, Article V, Class IV, p. 10, Docket No. 187.

3.      To retain and determine any disputes arising under or
relating to the Plan or arising under or relating to the
Chapter 11 reorganization case.

4.      To enforce all discharged provisions of the Plan.

5.      To make such further orders and directions pursuant
to 11 U.S.C. section 1127 and 1142 as may be
necessary or appropriate.

In anticipation of their inability to make the $50,000 principal payment,

the Debtors filed a proposed modified plan on December 31, 2013. The

proposed modification sought to extend the due date for the initial principal

payment through June 30, 2014. On March 10, 2014, the Court denied

approval of the modified plan. The Court found that because a significant

portion of the property to be distributed under the plan had not been conveyed

to claim holders, the plan had not been substantially consummated as of the

date of the hearing. The Court concluded that:

> Based on the facts and based on the argument that has been
> presented for the purpose of this case, I will find that there has not
> been substantial consummation as of this date. And I will, for the
> purpose of this case, adopt that line of cases that says substantial
> consummation does require a significant portion of [the] property
> to be distributed or [the] payments to be made to have been
> distributed or paid. That does not mean for other purposes and in
> other circumstances the Court does not reserve its right to change
> its mind or apply a different definition. But based on the facts and
> record in front of me and the arguments of counsel, I will conclude
> that there has not been substantial consummation.

Excerpt of Proceedings at 11, *In re J&B Haldeman Holdings, LLC,* No. 11-

11386-11, *In re James B. Haldeman,* No. 11-11359-11 (Bankr. W.D. Wis. Mar.

10, 2014).

3

**ARGUMENTS**

BRCB argues the Debtors are in default under the specific provisions of the Plan addressing BRCB's claim, and that pursuant to the default provisions the Debtors are obligated to deed certain property back to BRCB as a result of their failure to timely cure the default. BRCB contends the Plan provides that the Bankruptcy Court shall retain jurisdiction over the enforcement of the Plan. Accordingly, BRCB argues that section 1142(b) empowers the Court to order the Debtors to transfer the mortgaged property to BRCB as a result of the Debtors' default.

The Debtors do not dispute the default or the failure to cure. Instead, they argue the Court's post-confirmation authority is limited under 11 U.S.C. § 1142(b) to matters necessary for the consummation of the plan. They contend—mistakenly—that this Court previously concluded that their plan *had been* substantially consummated at the time of the March 10, 2014, hearing and that, as a result, the Court lacks jurisdiction to enter an order concerning their default under the confirmed plan.

**DISCUSSION**

<u>Subject Matter Jurisdiction</u>

Regardless of the terms of the Plan or the provisions of the Bankruptcy Code, the source of jurisdiction in cases under title 11 is 28 U.S.C. §§ 1334 and 157. *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.)*, 301 F.3d 296, 303 (5th Cir. 2002) (citing *United States Tr. v. Gryphon at the Stone*

*Mansion, Inc.*, 216 B.R. 764, 769 (W.D. Pa. 1997)). As a threshold matter, therefore, the Court must determine whether jurisdiction exists. Indeed, subject matter jurisdiction is "the first question in every case." *Illinois v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998). Without it, the Court "cannot proceed at all." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012, 140 L. Ed. 2d 210 (1998). Whether or not a confirmed plan purports to reserve jurisdiction to the bankruptcy court, the statutory requirements for subject matter jurisdiction must be met. *Federalpha Steel LLC Creditors' Trust v. Fed. Pipe & Steel Corp. (In re Federalpha Steel LLC)*, 341 B.R. 872, 879-80 (Bankr. N.D. Ill. 2006) (citations omitted).

Pursuant to 28 U.S.C. §§ 1334 and 157, the federal district courts have "original and exclusive jurisdiction" over all cases under title 11 ("Bankruptcy Code" or "Code") and "original but not exclusive jurisdiction" over all civil proceedings that arise under the Bankruptcy Code or that arise in or are related to cases under the Code. 28 U.S.C. §§ 1334(a)-(b). The district courts may, however, refer such cases to the bankruptcy judges within their district. In the Western District of Wisconsin, the district court has made such a reference. *See* Western District of Wisconsin Administrative Order 161 (July 12, 1984). By way of this reference, this Court "may hear and determine all cases under title 11 and all core proceedings under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments, subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1).

5

As an initial matter, 28 U.S.C. § 1334 governs bankruptcy court jurisdiction both before and after confirmation of a plan. Some courts refer to 11 U.S.C. § 1142(b) as a source of post-confirmation bankruptcy court jurisdiction. *See, e.g., Zerand-Bernal Grp., Inc. v. Cox (In re Cary Metal Prods., Inc.)*, 152 B.R. 927, 931 (Bankr. N.D. Ill. 1993), *aff'd*, 158 B.R. 459 (N.D. Ill. 1993), *aff'd*, 23 F.3d 159 (7th Cir. 1994) "Those courts, however, miss the point that the Bankruptcy Code does not confer jurisdiction." *U.S. Brass Corp.*, 301 F.3d at 306 n.29. Section 1142(b) assumes that bankruptcy courts have post-confirmation jurisdiction over disputes concerning the implementation or execution of a confirmed plan. *Id.* However, 28 U.S.C. § 1334 is the source of this jurisdiction. *Id.*

To ascertain whether there is jurisdiction under section 1334, the Court must first determine whether BRCB's motion arises under title 11, or whether it arises in or is related to a case under title 11. The fact that the Plan purports to reserve jurisdiction to the Court in certain circumstances does not dispose of the question of whether the Court has jurisdiction under 28 U.S.C. § 1334. *See Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994); *Federalpha Steel LLC*, 341 B.R. at 879-80. "Cases under" title 11 refers to the bankruptcy petition itself. *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 225-26 n.38 (3d Cir. 2004) (citations omitted). The "case under" title 11 is simply "the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place." 1 *Collier on Bankruptcy* ¶ 3.01[2] at 3-6 (16th ed. 2013).

6

A proceeding "arises under" title 11 if the cause of action in question is "created or determined by a statutory provision of title 11." *In re Spaulding & Co.*, 131 B.R. 84, 88 (N.D. Ill. 1990) (citing *Diamond Mortg. Corp. v. Sugar*, 913 F.2d 1233, 1238-39 (7th Cir. 1990); *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir. 1990)). "'[A]rising under' jurisdiction is analogous to 28 U.S.C. § 1331, which provides for original jurisdiction in district courts 'of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) (citations omitted).

The legislative history lists some examples of a proceeding arising under title 11:

> The phrase "arising under" has a . . . broad meaning in the jurisdictional context . . . . For example, a claim of exemptions under 11 U.S.C. § 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by [title 11].

H.R. Rep. No. 595, 95th Cong., 1st Sess. 445 (1977), *reprinted in* 1 *Collier* ¶ 3.01[3][e][i]) at 3-14. Further examples include confirmation of a plan and complaints objecting to a discharge, proceedings that "might generally be characterized as administrative matters, although they can be contested matters under Bankruptcy Rule 9014 . . . ." *Id.* at 3-15.

"Arising in" proceedings are generally defined as "administrative matters that arise only in bankruptcy cases." *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 911 (7th Cir. 2011) (citations omitted). These claims

7

would have "no existence outside of the bankruptcy." *Id.* Such administrative matters include allowance and disallowance of claims, orders in respect to obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans, and orders permitting the assumption or rejection of contracts. *See Stoe*, 436 F.3d at 218; *Kovalchick v. Dolbin (In re Kovalchick)*, 371 B.R. 54, 60 (Bankr. M.D. Pa. 2006). "In none of these instances is there a 'cause of action' created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case." 1 *Collier* ¶ 3.01[3][e][iv] at 3-21.

Categories of "related to" proceedings include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 n.5, 115 S. Ct. 1493, 1498-99, 131 L. Ed. 2d 403 (1995) (citing 1 *Collier on Bankruptcy* ¶ 3.01[1][c][iv], p. 3-28 (15th ed. 1994)). Once a court has determined that a proceeding falls into one of those two categories, it performs a second step of analysis. According to the Seventh Circuit Court of Appeals, the second inquiry is whether the dispute "affects the amount of property available for distribution or the allocation of property among creditors." *Elscint, Inc. v. First Wisconsin Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987); *see also SG & Co. Northeast, LLC v. Good*, 461 B.R. 532, 537-38 (Bankr. N.D. Ill. 2011).

This test is narrower than that of other circuits. Seventh Circuit courts recognize that delineating the scope of "related to" jurisdiction is a balancing act. The scope should be broad enough to force claims by and against the debtor into one forum to promote efficiency. *See Zerand-Bernal Grp.*, 23 F.3d at 161-62 (7th Cir. 1994). However, it should be narrow enough "to prevent the expansion of federal jurisdiction over disputes that are best resolved by the state courts." *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir.1996) (citations omitted).

No statute shrinks a bankruptcy court's jurisdiction upon confirmation of a plan. *See Omega Corp. v. United States, IRS (In re Omega Corp.)*, 173 B.R. 830, 834 (Bankr. D. Conn. 1994). Instead, as parties carry out the terms of the plan, fewer issues potentially affecting administration of the estate arise. *Federalpha Steel*, 341 B.R. at 880; *Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.)*, 195 B.R. 548, 555 (Bankr. D. Mass. 1996). "For this reason, simple logic dictates that at this stage in a reorganization the bankruptcy court's post-confirmation jurisdiction is reduced." *In re Polar Molecular Corp.*, 195 B.R. at 555. The focus of the court's jurisdiction simply shifts to ensuring that reorganization plans are implemented, and "protect[ing] estate assets devoted to implement the confirmed Plan." *Schwinn Cycling & Fitness, Inc. v. Benonis (In re Schwinn Bicycle Co.)*, 210 B.R. 747, 754 (Bankr. N.D. Ill. 1997), *aff'd*, 217 B.R. 790 (N.D. Ill. 1997) (citations omitted); *see Spiers Graff Spiers v.*

*Menako (In re Spiers Graff Spiers)*, 190 B.R. 1001, 1007 (Bankr. N.D. Ill. 1996)

(collecting cases); *In re Polar Molecular Corp.*, 195 B.R. at 555.

Following this reasoning, even "related to" jurisdiction can extend to

post-confirmation disputes. *Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*,

243 F. Supp. 2d 786, 789-90 (N.D. Ill. 2003); *see S.N.A. Nut Company v.

Häagen-Dazs Co. (In re S.N.A. Nut Co.)*, 206 B.R. 495, 500 (Bankr. N.D.

Ill.1997). Recognizing the tension between efficiency of administration and the

need to guard against overly expansive federal court jurisdiction, *infra* p. 9,

Seventh Circuit courts apply the same test to "related to" jurisdiction in a

post-confirmation context as in a pre-confirmation context. Post-confirmation

"related to" jurisdiction exists only where adjudication would affect the

property available for distribution or the allocation of property among creditors.

*In re FedPak Sys., Inc.*, 80 F.3d at 214-15; *Cytomedix*, 243 F. Supp. 2d at

789-90.

Courts agree that they in fact have jurisdiction to do what 11 U.S.C.

§ 1142(b) says they may do:

> [D]irect the debtor and any other necessary party to execute or
> deliver or to join in the execution or delivery of any instrument
> required to effect a transfer of property dealt with by a confirmed
> plan, and to perform any other act, including the satisfaction of
> any lien, that is necessary for the consummation of the plan.

Indeed, the "plain text [of section 1142] leaves little doubt that

post-confirmation jurisdiction exists to the extent necessary to consummate

the plan." *Zerand-Bernal Grp.*, 152 B.R. at 931 (Bankr. N.D. Ill. 1993). However,

courts disagree about the jurisdictional basis for using section 1142(b) to enter

orders. Some maintain that it arises because a motion seeking an order

pursuant to section 1142 "arises under" title 11. Others state that it "arises in"

a case under title 11.[3]

The Seventh Circuit Court of Appeals has said that section 1142(b)'s

"language does not confer any substantive rights on a party apart from

whatever the plan provides." *Village of Rosemont v. Jaffe*, 482 F.3d 926, 935

(7th Cir. 2007). "Instead, it [section 1142(b)] 'empowers the bankruptcy court

to enforce the unperformed terms of a confirmed plan.'" *Id.* (quoting *U.S. Brass

Corp.*, 301 F.3d at 306 (5th Cir. 2002)). The quoted Fifth Circuit Court of

Appeals case went on to state that section 1142(b) proceedings "arise in" a case

under title 11. "[Section] 1142(b) does not confer substantive rights so much as

it empowers the bankruptcy court to enforce the unperformed terms of a

confirmed plan. Thus, proceedings within the contemplation of § 1142(b) are

more appropriately viewed as 'arising in' a case under title 11." *U.S. Brass

Corp.*, 301 F.3d at 306.

The case law addressing jurisdiction over post-confirmation motions

reflects a certain tension. On the one hand, it has been well-accepted for

---

[3] It should be noted that the present action does not fall into either of the two
categories the Supreme Court identified as "related to" proceedings in *Celotex*. *See* 514
U.S. at 308 n.5. It is not a cause of action owned by the Debtors which became
property of the estate pursuant to 11 U.S.C. § 541. Nor is it a suit between third
parties which has an effect on the bankruptcy estate. Instead, it is a creditor asking
for an order requiring the Debtors to do what the Plan provided they would do.

decades that courts should resist the tendency "to keep reorganized concerns in tutelage indefinitely by orders purporting to retain jurisdiction . . . ." *N. Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir. 1944) (citations omitted). On the other hand, "it is important for a bankruptcy court to retain jurisdiction so that it can monitor property transferred in accordance with the terms of the plan of reorganization." *Zerand-Bernal Grp. v. Cox*, 158 B.R. 459, 463 (N.D. Ill. 1993), *aff'd*, 23 F.3d 159 (7th Cir. 1994).

The view in the Seventh Circuit is that post-confirmation jurisdiction in the bankruptcy court is appropriate when "adjudication has an impact on the estate or the recovery of the creditors." *In re S.N.A. Nut Co.*, 206 B.R. at 500 (citations omitted). Courts "exercise post-confirmation jurisdiction up to the point at which the creditor's action will not affect the administration of the plan and prohibit the adjudication of complaints when the action has no impact on the estate or the recovery of its creditors." *Zerand-Bernal Grp.*, 158 B.R. at 463 (N.D. Ill. 1993) (citing *Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir. 1991); *In re Xonics, Inc.,* 813 F.2d 127, 131 (7th Cir. 1987)). "Thus, the critical consideration, when determining whether or not the bankruptcy court has jurisdiction, is whether the outcome of the pending complaint would affect the estate." *Id.*

Section 1142(b)'s "language does not confer any substantive rights on a party apart from whatever the plan provides." *Village of Rosemont v. Jaffe*, 482

F.3d 926, 935 (7th Cir. 2007). The court's power under section 1142(b) is premised on the existence of the plan. It is the plan itself that confers the relevant rights on parties, not the Bankruptcy Code. Therefore, a proceeding to enforce a term of the confirmed plan "arises in" a case under title 11. Moreover, enforcing a term of a confirmed plan falls precisely within the scope of narrowed post-confirmation jurisdiction that allows courts to enforce unperformed terms and protect assets necessary to implement the plan. *See Schwinn Cycling & Fitness*, 210 B.R. at 754; *In re Spiers Graff Spiers*, 190 B.R. at 1007; *In re Polar Molecular Corp.*, 195 B.R. at 555. Thus, the Court has jurisdiction over this proceeding under 28 U.S.C. § 1334, and the Debtors' argument that BRCB must bring a state law breach of contract claim to enforce the terms of the Plan fails.

There can be no doubt that BRCB's motion, which seeks an order to compel the Debtor to transfer property in consequence of its default under the confirmed plan, would have a direct impact on the estate and on creditors' recovery. The motion clearly asks this Court to monitor and enforce transfer provisions of the Plan. It requests, simply, that the Debtors be compelled to execute the provisions of the Plan. In light of these observations, and given that BRCB's motion arises in a case under title 11, this Court has jurisdiction pursuant to 28 U.S.C. § 1334.

The Debtors' contention that a court loses section 1142(b) power if a confirmed plan has been substantially consummated is incorrect. Section

13

1142(b) does not limit a court's authority to enter orders necessary to effect

substantial consummation of the confirmed plan; it merely limits the court's

authority to that which is "necessary for the consummation of the plan." 11

U.S.C. § 1142(b). The bankruptcy court's authority to enforce the terms of a

confirmed plan therefore lapses only after the plan has been fully

consummated. *See Zerand-Bernal Grp.*, 152 B.R. at 931. Section 1142(b)

should be contrasted with section 1127(b), which allows the court discretion to

permit modification of a chapter 11 plan "at any time after confirmation of such

plan and before substantial consummation of such plan . . . ." 11 U.S.C.

§ 1127(b).

<u>Statutory Authority to Order Transfer of Deed</u>

Upon confirmation, "the provisions of a confirmed plan bind the debtor,

. . . any entity acquiring property under the plan, and any creditor . . . ." 11

U.S.C. § 1141(a). Likewise, the confirmation process forces parties to "speak

now or forever hold their peace," because confirmation bars them from bringing

new claims or raising issues that could have been entertained prior to

confirmation. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152-53, 129

S. Ct. 2195, 2205-6, 174 L. Ed. 2d 99 (2009).

Once a plan is confirmed, "the debtor and any entity organized or to be

organized for the purpose of carrying out the plan shall carry out the plan and

shall comply with any orders of the court." 11 U.S.C. § 1142(a). To facilitate

this process, the Court "may direct the debtor and any other necessary party to

14

execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). The scope of the authority granted to the Court under section 1142(b) is broad, and is commonly invoked to order the execution of bills of sale, the transfer of deeds to property, stock transfers, and other instruments related to title to property in the reorganized debtor. *See In re Goldblatt Bros., Inc.,* 132 B.R. 736, 741 (Bankr. N.D. Ill. 1991). 8 *Collier* ¶ 1142.03 at 1142-5. What is more, even after confirmation, a bankruptcy court with jurisdiction may "interpret and enforce its own prior orders," particularly when such orders contain provisions that explicitly retain the court's jurisdiction for enforcement purposes. *Travelers Indem. Co.*, 557 U.S. at 151, 129 S. Ct. at 2205 (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S. Ct. 695, 78 L. Ed. 1230 (1934)).

The authority is not limitless, however, because section 1142(b) "does not confer substantive rights so much as it empowers the bankruptcy court to enforce the unperformed terms of a confirmed plan." *U.S. Brass Corp. v. Travelers Ins. Grp., Inc. (In re U.S. Brass Corp.),* 301 F.3d 296, 306 (5th Cir. 2002); *accord Village of Rosemont v. Jaffe,* 482 F.3d 926, 935 (7th Cir. 2007). Thus, the breadth of the Court's authority to issue orders under section 1142(b) is confined to matters that are provided for in the Plan. *See Village of Rosemont*, 482 F.3d at 935.

15

The Debtors' Plan clearly provides not only for a payment schedule, but for the consequences of a default. The provisions concerning BRCB's treatment established relevant payment due dates - in this instance, by December 31, 2013. In the absence of payment by that date, the Debtors were in default. The Plan afforded the Debtors a 60-day period to cure the default. Failure to cure required the Debtors to deed back certain property to BRCB.

The Debtors' arguments concerning notice obligations and the suggestion that default did not occur until the expiration of the 60-day extension period are not supported by the plain language of the Plan. Neither are the arguments relevant to the issue before the Court. The Debtors defaulted. Whether before or after the filing of the motion, the Debtors were aware of the default and that BRCB demanded return of the property or payment. Far more than 60 days has passed and the Debtors neither made the payment nor delivered the deed. It is undisputed there was no cure.

Likewise, the Debtors' contention that section 1142 is inapplicable because the Plan has been substantially consummated is incorrect for several reasons. First, the Debtors mistakenly allege that the Court ruled at the hearing concerning the modified plan that the Plan had been substantially consummated. In fact, the Court's decision was the opposite. What is more, section 1142(b) does not provide that the Court may enter orders directing the debtor to perform "any other act" necessary to effect *substantial* consummation of the confirmed plan. It provides that the court may direct any other act

16

"necessary for the *consumption* of the plan." 11 U.S.C. § 1142(b) (emphasis

added). The bankruptcy court's authority to enforce the terms of a confirmed

plan therefore lapses only after the plan has been fully consummated.

So long as BRCB's treatment under the Plan remains incomplete, this

Court retains its section 1142(b) authority because the Plan will not be fully

consummated so long as the estate continues to be administered. The question

of consummation is one of fact, and in the absence of an evidentiary

foundation to reverse the Court's prior finding, there is no basis on which the

Court can determine the Plan has been consummated. The Plan in this case

has not been consummated nor has there been substantial consummation.

<u>Abstention</u>

Once a bankruptcy court determines it has jurisdiction, the court ought

to then consider whether the resolution of the matter is better left to another

court. This is particularly true in this case because, while not requesting

abstention, the Debtors argue that the enforcement of Plan terms would be

better left to a state court. The court has the option of discretionary abstention

under 28 U.S.C. § 1334(c)(1), which provides that

> [N]othing in this section prevents a district court in the interest of
> justice, or in the interest of comity with State courts or respect for
> State law, from abstaining from hearing a particular proceeding
> arising under title 11 or arising in or related to a case under title
> 11.

After finding that it had jurisdiction over a chapter 11 trustee's complaint

to recover income generated post-confirmation for distribution to unsecured

creditors pursuant to the plan, the court in *In re Polar Molecular Corp.* discussed the factors that led it to exercise its jurisdiction. 195 B.R. at 557 (Bankr. D. Mass. 1996). First, the plan contained clauses providing that the court would retain jurisdiction. *Id.* Second, "the issues at hand [went] to the heart of consummation of the Plan, involving enforcement of its terms and affecting the amount of future distributions to unsecured creditors." *Id.* Third, there was no related proceeding in state court, so the bankruptcy court was in the best position to efficiently rule on the trustee's complaint. *Id.* Finally, the court was familiar with the plan and the parties involved. *Id.* Consequently, the court declined to abstain. *Id.* Each of those factors are present in this case.

The Seventh Circuit Court of Appeals notes that "federal courts generally should exercise their jurisdiction if properly conferred." Therefore, "abstention is the exception rather than the rule." *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993). However, because section 1334(c)(1) is "somewhat oblique," the Seventh Circuit has identified twelve factors to provide guidance to courts in deciding whether to abstain. *Id.*, *see In re Federalpha Steel LLC*, 341 B.R. at 882. The factors are:

(1)    the effect of abstention on the efficient administration of the estate;

(2)    the predomination of state law issues over issues of bankruptcy law;

(3)    the difficulty or unsettled nature of the applicable law;

(4)     the presence of a related proceeding in a state or other
        nonbankruptcy court;

(5)     the federal jurisdictional basis other than 28 U.S.C. § 1334;

(6)     the relatedness or remoteness of the proceeding to the main
        bankruptcy case;

(7)     the substance rather than form of an asserted "core"
        proceeding;

(8)     the feasibility of severing state law claims from core
        bankruptcy matters;

(9)     the burden on the bankruptcy court's docket;

(10)    the likelihood of forum shopping;

(11)    the existence of a right to a jury trial; and

(12)    the presence of nondebtor parties.

*In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d at 1189.

As indicated, jurisdiction is properly conferred. Abstention, therefore,

should be the exception. Abstention will not advance the efficient

administration of this case. The issue is enforcement of a confirmed plan and

there is not a predomination of state law issues over bankruptcy law, nor is

there a related proceeding in any other court. The substance of the issue is the

enforcement and interpretation of a confirmed plan and is clearly a core

proceeding. The matter is not burdensome to the Court's docket. The Plan and

Code provide for continued jurisdiction. The issue presented by the motion

goes to the heart of enforcement of the Plan's terms. There are no related

proceedings pending in another forum. Finally, this Court is familiar with the Plan and the parties.

In light of the foregoing, the Debtors' arguments fail. The Court has jurisdiction because BRCB's motion arises in a case under title 11 and directly affects the estate and the recovery of creditors. The issue is central to the enforcement of the Plan. The Court is empowered to interpret its own orders and the provisions of confirmed plans, and section 1142(b) authorizes it to issue additional orders necessary to consummation of the Plan. Because the Plan clearly provides for the Debtors' deeding of property to BRCB upon the Debtors' failure to cure the default in payments within 60 days, and because the Debtors failed to cure the default within that period, they are obligated to deed the property to BRCB.

## CONCLUSION

For the foregoing reasons, BRCB's motion is GRANTED.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: September 23, 2014.

BY THE COURT:

Hon. Catherine J. Furay
U.S. Bankruptcy Judge

20